**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DOMINIC CAPOGRECO, et al., | ) | Case No. 4:01 CV 1608 |
|  | ) |  |
| Plaintiffs, | ) | MAGISTRATE JUDGE |
|  | ) | GEORGE J. LIMBERT |
| v. | ) |  |
|  | ) |  |
| PRO INSURANCE AGENCY, INC., et al., | ) | **MEMORANDUM OPINION** |
|  | ) | **AND ORDER** |
| Defendants. | ) |  |

This matter is before the Court on the motion for summary judgment filed by Plaintiffs:

Dominic Capogreco, Wilford Kyser; Richard Colonna; Cynthia Colonna; Betty Janecko; Diana

Luster; Patricia Maiorca; Ronald Wilson; Sally Lou Wilson; Livia Mangiarelli; Charles H.

Miller; Linda L. Miller; Delores Zetts; Clyde Bennett; Michael Rinko; Nicolette Rinko; Trent

Shirey; Ann Urbanek; Helen Michalos; George George; Ignation George; Salvatore Mangiarelli

Living Trust, by and through its trustee Salvatore Mangiarelli; Peggy Kyser; Clinton Apple; B.

Louise DiDay; William A. Denman; Nicholas Bubon, III; Sophia Simko; and Virgil Mokodean

(collectively "Betras Plaintiffs"[1]).  ECF Dkt. #158, 159.  For the reasons set forth below, the

---

[1]     Each of the aforementioned Plaintiffs is represented by Betras, Maruca, Kopp,
Harshman & Bernard).  Other Plaintiffs in this case have previously prevailed on a
motion for summary judgment and were represented by separate counsel,
Comstock, Springer & Wilson ("Comstock Plaintiffs").  ECF Dkt. #147, 148.
The most convenient way to distinguish the Plaintiffs from each other is to refer
to them based upon the law firm that represented them.  The Betras Plaintiffs and
Comstock Plaintiffs are collectively referred to as "Plaintiffs."

Court GRANTS in PART and DENIES in PART Betras Plaintiffs' motion for summary judgment.

## I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Based on the Court's previous Order granting partial summary judgement on behalf of Comstock Plaintiffs, the factual background is as follows:

Beginning in 1997, Defendants John Prokop ("Prokop") and his daughter Lisa Marie Tokarsky ("Tokarsky") represented themselves to the general public as financial advisors. ECF Dkt. #146, Attachment 2 at ¶ 16. Prokop and Tokarsky were listed in the Ameritech Yellow Pages under the name "Pro Financial Planners" and under the category "financial planning consultants and services" in 1997 and 1998. *Id*. Defendants were also listed as "Pro Insurance Agency, Inc." under the "insurance" category in 1999 and 2000. *Id*. at ¶ 17.

In July 1997, Prokop and Tokarsky began offering for sale to the public, payphone investments from a company named ETS Pay Phones, Inc.[2] ("ETS") and viatical insurance investments. *Id*. at ¶¶ 5 and 17. Advertisements accompanying the Defendants' Yellow Pages listing described the ETS investments as having a "guaranteed fixed rate of return" and described "Viatical Investments" as being "guaranteed no risk investments." *Id*. at ¶ 17. Prokop and/or Tokarsky also ran advertisements in The Vindicator, a Youngstown newspaper, offering "guaranteed investments." *Id*. at ¶ 18.

Defendants Prokop and Tokarsky sold payphone investments to Plaintiffs (in addition to other investors) at costs ranging from Six Thousand Dollars ($6,000) to Seven Thousand Dollars ($7,000) per payphone. *Id*. at ¶ 2. After meetings with Prokop and/or Tokarsky, each Plaintiff would provide Prokop and/or Tokarsky with a check for the desired number of payphones. *Id*.; See also ECF Dkt. #146, Attachments 3-22. Upon receiving the checks, Prokop and/or Tokarsky would forward the payment via U.S. mail to Defendant Hayes Financial Group. *Id*.

Immediately upon Plaintiffs' purchasing of the payphone investments, Defendants would arrange a lease of the payphones back to ETS for a five-year period. ECF Dkt. #146, Attachment 2 at ¶ 10. The leases set forth a monthly payment to investors of eighty-two dollars ($82), a fourteen percent (14 %) return on the payphone

---

[2]       ETS was engaged in the business of buying, selling and operating pay telephones.

investment. *Id*. Furthermore, Plaintiffs/investors could cancel the leases at any time without penalty. *Id*. Approximately 180 days after cancellation, ETS would repurchase the payphone for the full original sales price. *Id*.

Defendants Prokop and Tokarsky made representations to the Plaintiffs regarding each of the terms of the ETS leases. ECF Dkt. #146, Attachments 3-22. Defendants informed Plaintiffs that at the end of the lease Plaintiffs would have the option of renewing the lease or selling back the payphone for the full original sales price. *Id*. Prokop and Tokarsky also made representations regarding the financial stability of ETS, including advising Plaintiffs that either Prokop or Tokarsky had personally researched the investments to determine their financial security. ECF Dkt. #146, Attachment 2 at ¶ 14. Additionally, Prokop and Tokarsky made claims to Plaintiffs that they had invested some of their own money in ETS payphones. *Id*. However, neither Prokop nor Tokarsky ever invested personal money in ETS [payphones]. *Id* at ¶ 19.

In November 1999, ETS released to its Pennsylvania lessors information regarding the company's financial instability. *Id*. at ¶ 48. The letter mentioned the enormous operating debt of the company and its continued reliance on new investors for continued operation. *Id*. at ¶ 48. Despite this information, Defendants continued to offer ETS payphone investments and failed to disclose the information to current investors. *Id*. Additionally, Prokop and Tokarsky appeared on-air during a radio broadcast to advertise the ETS payphone investments. *Id*. at ¶ 15. Again, Prokop and Tokarsky represented the investments as guaranteed and as having a 14% rate of return. *Id*. at ¶ 15.

Throughout the period of selling ETS payphone investments and viatical insurance benefits, Defendants Curtis Hayes, Jean Hayes and Hayes Financial Group (collectively "Hayes") paid commissions to Prokop, Tokarsky, Pro Financial Planners and Pro Insurance Agency (collectively "Prokop Defendants"). *Id*. at ¶¶ 22-23. Evidence indicates Prokop Defendants generated in excess of one million dollars in income from the sale of investments. *Id*. The investment scheme also enabled Hayes to earn monetary bonuses paid by ETS. ECF Dkt. #100 at ¶ 283.

On September 11, 2000, ETS filed for bankruptcy and all lease payments to investors ceased. ECF Dkt. #146, Attachment 3 at ¶ 24. At the time of filing, ETS had a stockholders' deficit of $24,493,531.00 and a net loss from operations of over $32,000,000. *Id*. Prior to the bankruptcy of ETS, a number of states had taken legal action to stop investment in ETS payphones. *Id*. at 37. After ETS filed for bankruptcy, the Security and Exchange Commission filed a complaint against ETS and its chief executive officer. *Id*. at ¶ 25. Prokop admitted to having reviewed the financial statements of ETS and that he had experience interpreting financial records. *Id*. at ¶ 33. However, neither Prokop nor Tokarsky ever disclosed information

-3-

regarding the dire financial situation of ETS or of any litigation involving ETS to the Plaintiffs. *Id*. at ¶ 31.

Prokop Defendants also sold investment opportunities in viatical insurance benefits. ECF Dkt. # 146, Attachment 9 at ¶ 4. Similar to the payphone investments, Prokop Defendants guaranteed the viatical investments and assured investors that they had researched the investments. *Id*. at ¶ 4. Prokop Defendants also guaranteed investors that they would be able to resell the investments at any time. *Id*. at 9. When Prokop Defendants convinced someone to invest in viatical insurance benefits, Mutual Benefits Corporation handled the purchase of the policy and provided medical summaries for each of the insured individuals. *Id*. at ¶ 6. In 1997 and 1998, the physicians retained by Mutual Benefits Corporation estimated that the life expectancy of each of the insured/patients was 36 months or less. *Id*. at ¶ 7. However, as of August 2002, the insured were still living and the physicians' original diagnoses were no longer listed by the treating physicians. *Id*. at ¶ 8. Furthermore, no return on investment was projected within the foreseeable future. ECF Dkt. # 146, Attachment 3 at ¶ 11.

During the relevant time period, Prokop was a registered representative and licensed to sell securities through a broker/dealer by an Illinois corporation known as IAC Securities, Inc. ("IAC"). *Id*. at ¶ 50. However Prokop failed to inform IAC of his sales of ETS payphone investments or viatical insurance benefits, which constituted a violation of IAC's policy. *Id*. at ¶ 51. Subsequently, IAC terminated Prokop for his failure to report outside business activity. *Id*. at ¶ 51.

In April of 2002, Prokop submitted a letter of "acceptance, waiver, and consent" to the National Association of Security Dealers (NASD). *Id*. at ¶ 58. Prokop's submission barred his association with any NASD member in any capacity. *Id*. at ¶ 58. Also, by losing his security license, Prokop was barred from reselling the viatical investments as he had promised.

On July 2, 2001, Plaintiffs filed a Complaint alleging violations of the1964 Racketeering Influenced and Corrupt Organizations (RICO) Act,[3] Ohio Rev. Code § 2923.31, common law fraud, negligent misrepresentation, common law breach of fiduciary duty, and violation of Ohio securities[ ] law. ECF Dkt. #1. On July 23, 2001, Defendants John Prokop, Lisa Marie Tokarsky, and Pro Insurance Agency Inc. filed an answer. ECF Dkt. #5. On August, 24, 2001, Defendants Hayes Financial Group filed an answer. ECF Dkt. #10. Thereafter, on October 3, 2001, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #21. Subsequently, Plaintiffs filed multiple amended complaints naming additional Plaintiffs and Defendants. ECF Dkts. ##54, 71, 100. On June 17, 2003, Plaintiffs filed the latest

---

[3]      18 U.S.C. §§ 1961-1968.

Amended Complaint/Intervenor's Complaint, which corresponds to the instant motion for summary judgment.  ECF Dkt. #100.

On June 11, 2003, Court stayed proceedings for one year due to a pending FBI investigation of Prokop Defendants on related matters and on April 27, 2004, the undersigned continued the stay for one year.  ECF Dkt. ##s 99, 116. Then, on July 8, 2005, upon motion by Pro Insurance Agency, Inc., John Prokop, and Lisa Marie Tokarsky, the undersigned continued the stay until January 3, 2006.  ECF Dkt. # 128. In the meantime, on August 3, 2005, a criminal indictment was filed against Defendants Prokop and Tokarsky in the Northern District of Ohio alleging conspiracy, mail fraud, wire fraud, false declarations before the Court, securities fraud, and money laundering. United States v. Prokop, et. al., 4:05CR384. On December 22, 2005, the undersigned again continued the stay until April 24, 2006, pending completion of the ongoing criminal investigation.  ECF Dkt. #131.

On May 23, 2006, Defendant Lisa Marie Tokarsky filed a notice of bankruptcy and the bankruptcy court retained jurisdiction over the liability and amount of Plaintiffs' claims against her in this case.  ECF Dkts. ##138 and 144, Attachment 1.

ECF Dkt. #147 at 1-6.

On March 20, 2007, the Court granted Comstock Plaintiffs' motion for leave to file a motion for summary judgment.  ECF Dkt. #144.  On April 20, 2007, Comstock Plaintiffs filed a motion for summary judgment against Defendants John Prokop, Pro Financial Planners, Pro Insurance Agency, Inc., Curtis Hayes, Jean Hayes, and Hayes Financial Group which was granted in part and denied in part.  ECF Dkt. #146-148, 156.  At that time the case was closed. On July 30, 2007, Betras Plaintiffs filed a Motion for Relief from Judgment seeking to reopen the case for the purpose of filing a motion for summary judgment on their behalf.  ECF Dkt. #153.  On August 6, 2007, Comstock Plaintiffs filed a Memorandum in Response opposing Betras Plaintiffs' motion for relief from judgment.  ECF Dkt. #154.  On August 14, 2007, the Court granted Betras Plaintiffs' motion and reopened the above captioned case.  ECF Dkt. #155. On August 27, 2007, Betras Plaintiffs filed the instant motion for summary judgment against Defendants John Prokop, Pro Financial Planners, Pro Insurance Agency, Inc., Curtis Hayes,

-5-

Jean Hayes, and Hayes Financial Group.[4]  ECF Dkt. #158.  On November 12, 2007, Betras

Plaintiffs filed a supplement to their motion for summary judgment.  ECF Dkt. #159.  As of

today's date, Defendants have not filed a response.

## II.     STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party

is unable to demonstrate the existence of a factual dispute which, if present, would require

resolution by a jury or other trier of fact.  *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6ᵗʰ Cir.

1982).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no

genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).  This burden can be discharged by showing that the nonmoving party has failed to

establish an essential element of his case, for which he bears the ultimate burden of proof at

trial.  *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor

Co., Inc.,* 71 F.3d 531, 535 (6ᵗʰ Cir. 1995).  The evidence and all the inferences that can

reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party.

*Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to

avoid the entry of a summary judgment.  *See* Fed. R. Civ. P. 56(e).  To refute such a showing,

---

[4]     Because the bankruptcy court retains jurisdiction over Defendant Tokarsky,
Betras Plaintiffs do not seek judgment against her in this motion.  ECF Dkt. #158.

the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322.  A mere scintilla of evidence is not enough.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

## III.    LAW AND ANALYSIS

Betras Plaintiffs come before the Court asserting that no genuine issue of material fact remains and that they are entitled to judgment as a matter of law on the claims of  violations of the 1964 Racketeer Influenced and Corrupt Organizations Act ("RICO") and O.R.C. § 2921.31, fraud/negligent misrepresentation, and breach of fiduciary duty against all Defendants, except Lisa Tokarsky.  ECF Dkt. #158 at 1,5; ECF Dkt. #159 at 2, 9.  The undersigned will address each count in turn.

### A.    <u>Violation of 1964 Racketeering (RICO) Act</u>

RICO makes it unlawful for "any person employed by, or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. §1962(c); *Davis v. Mutual Life*

-7-

*Ins. of NY*, 6 F.3d 367, 376 (1993) (upholding a RICO violation where defendants induced

plaintiffs to participate in defendants' tax and insurance scheme).  In order to satisfy a claim for

violation of §1962(c), Betras Plaintiffs must prove: "(1) that there were two or more predicate

offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of

racketeering activity and the enterprise; and (4) that an injury to business or property occurred

as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F. 3d

696, 699 (6th Cir. 2000).  Further, the United States Supreme Court has held that "in order to be

held responsible under [] [RICO], a defendant must have not only participated in the scheme,

but must have also participated in the operation or management of the enterprise itself." *Id.*

quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

### 1.    Predicate Offenses

A violation of 18 U.S.C. § 1962(c) requires a finding that defendant participated in

"racketeering activity," which the statute defines as the commission of any of the enumerated

"predicate offenses."  18 U.S.C. § 1961(1)(B).  The list of predicate offenses includes 18 U.S.C.

§ 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  RICO also requires that there be a

"pattern of racketeering activity."  18 U.S.C. 1962(c).  A "pattern of racketeering activity"

consists of at least two acts of racketeering activity committed within a ten year period.  18

U.S.C. § 1961(5).

Evidence presented in Betras Plaintiffs' motion for summary judgment illustrates that

Defendants participated in a "pattern of racketeering activity" through their violations of 18

U.S.C. § 1341 for mail fraud and 18 U.S.C. § 1343 for wire fraud.  Specifically, §1341 provides,

> Whoever, having devised or intended to devise any scheme or artifice to defraud, or
> for obtaining money or property by means of false or fraudulent pretenses,

-8-

> representations, or promises . . . for the purposes of executing such scheme or artifice
> or attempting so to do, places in any post office or authorized depository for mail
> matter, any matter or thing whatever to be sent or delivered by the Postal Service . .
> . shall be fined under this title.

18 U.S.C. § 1341.  The uncontested evidence indicates that Defendants consistently made false

promises and guarantees regarding the safety of the investments in order to persuade potential

investors.  ECF Dkt. #158, Ex. 1,2, A-FF (pages 31-139).  Defendants' scheme generated

substantial revenue and also helped defendants Tokarsky, Prokop, Curtis Hayes, and Jean Hayes

earn bonuses and commissions.  Defendants facilitated and promoted this fraud through use of

the U.S. Mail Service by receiving lease payments from investors, forwarding payments to

Hayes Financial, and mailing correspondence to investors.  ECF Dkt. #147, Attach. 2 at ¶¶ 8,

11, 48, 59, 60 (Betras Plaintiffs incorporate Comstock Plaintiffs' motion for summary judgment

by reference; the Court will consider the affidavits attached thereto while addressing the instant

motion.  ECF Dkt. #158 at 1.)

Betras Plaintiffs further assert that Defendants committed wire fraud, again providing

evidence of Defendants' participation in a "racketeering activity."  Section 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or
> for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, transmits or causes to be transmitted by means of wire,
> radio, or television communication in interstate or foreign commerce, any writings,
> signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice,
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  The evidence supports a finding of wire fraud committed by the Defendants.

Here, Defendants devised a scheme to induce individual Betras Plaintiffs to invest in ETS

payphones, and viatical insurance policies.  Defendants used radio broadcasts to promote their

fraudulent scheme and made use of cellular and land phones in the execution of the scheme.

-9-

ECF Dkt. # 146, Attach. 2 at ¶ 15, 19.  Defendants also placed advertisements in the Yellow Pages that provided telephone numbers investors could use to inquire about ETS Payphones and their "guaranteed fixed rate of return."  *Id*. at ¶¶ 16, 17.  It is fair to presume that Defendants used these telephones in furtherance of their fraudulent scheme.  As a result of this wire fraud and the underlying scheme to defraud investors, Defendants generated revenue, earned monetary bonuses, and earned commission.

### 2. <u>Enterprise</u>

In regard to 18 U.S.C. § 1962, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  The Supreme Court has held that the catch-all phrase ("any union or group . . . ") in §1961(4) means, "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States. v. Turkette*, 452 U.S. 576, 583 (1981) (holding that criminal organizations may constitute "enterprises").

Where a plaintiff alleges an associated-in-fact enterprise, the plaintiff must prove: (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged.  *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F. 3d 696, 699 (6th Cir. 2000) (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)).  Courts implemented these requirements "to keep simple conspiracies beyond the purview of RICO."  *City of Cleveland v. Woodhill Supply, Inc.*, 403 F.Supp. 2d 631, 635 (N.D. Ohio 2005).  However, a plaintiff may allege the separate elements of "enterprise" and "pattern of racketeering activity" through the same facts. *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781-82 (6th Cir. 2000) citing *United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985).

-10-

Here, Betras Plaintiffs assert Prokop Defendants and Hayes constituted an associated-in-fact enterprise ("Prokop Enterprise") subject to the regulations of 18 U.S.C. § 1962.  ECF Dkt. #159 at 4.  Betras Plaintiffs provide evidence of an ongoing relationship and a hierarchical structure amongst the parties involved in the Prokop Enterprise.  Specifically, the process of procuring the investments involved each Plaintiff presenting money for the ETS payphone investments to Defendants, who then sent the checks to Hayes.  Once Plaintiffs received the "bill of sale" for the payphones, the Prokop Enterprise worked together to arrange a lease of the payphones back to ETS.  Betras Plaintiffs also proffer evidence of a system of compensation amongst the parties in the Prokop Enterprise.  Prokop Defendants received compensation in the form of commission and bonuses from Hayes.  Likewise, Hayes received bonuses from ETS for the sale of payphones.  This system of compensation and pattern of activity utilized by the Prokop Enterprise establishes that the "'enterprise' is not the 'pattern of racketeering activity;' it is an entity separate and apart from the pattern of activity in which it engages."  *United States v. Turkette,* 452 U.S. 576, 583 (1981).

The Court must also consider whether the enterprise was engaged in or affected interstate commerce.  18 U.S.C. § 1962(c).  Here, Betras Plaintiffs provide evidence of the Prokop Enterprise's interstate effect.  Specifically, parties involved in and affected by the Prokop Enterprise were from different states (Hayes Financial Group from Florida; Pro Insurance and Pro Financial Planners from Ohio; ETS from Georgia).  ETS Dkt. # 146, Attach. 2.  Furthermore, the leased payphones were located all over the United States.  *Id*.  Thus, the Prokop Enterprise was sufficiently engaged in interstate commerce.

**3.** **Nexus Between "Racketeering Activity" and "Enterprise"**

A plaintiff must provide evidence that some nexus existed between the racketeering and the enterprise. *VanDenBroeck  v. CommonPoint Mortg. Co.*, 210 F. 3d 696, 699 (6th Cir. 2000). "Simply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000).  Here, Betras Plaintiffs provide evidence of the connection between the racketeering activity and the enterprise.  Specifically, the Prokop Enterprise used radio broadcasts consisting of false promises and guarantees regarding the financial safety of the investments in order to recruit new investors and further the money-generating efforts of the enterprise.  Additionally, the Prokop Enterprise used the U.S. Mail Service to transmit brochures containing false promises and guarantees regarding the investments, transmit money amongst the enterprise's parties, and transmit "Bill[s] of Sale" to the investors.  Therefore, the Prokop Enterprise's racketeering activities of wire fraud and mail fraud are sufficiently connected because the Enterprise employed these activities to promote and facilitate the Enterprise's goals.

**4.** **Injuries Caused by Defendants' "Pattern of Racketeering Activity"**

The Sixth Circuit Court of Appeals requires standing and proximate cause to establish a sufficient relationship between the injuries and the "pattern of racketeering activity." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004).  In *Trollinger*, the court held that standing required the injury to be directly resulting from a harmful act, not merely a derivative of injury to a third party.  *Id.*  Further, the court held that proximate cause required that the "wrongful conduct be a substantial and foreseeable cause and that the connection be logical and

-12-

not speculative." *Id*.

The uncontested evidence supports a finding that the injuries suffered by Betras Plaintiffs are sufficiently related to the Defendants' racketeering activities. Defendants utilized a fraudulent scheme to gain Betras Plaintiffs' trust and coerce Betras Plaintiffs into making financial investments. As a result of these fraudulently induced investments, Defendants generated revenue and Betras Plaintiffs suffered actual monetary damages.

Affidavits accompanying Betras Plaintiffs' motion for summary judgment provide unopposed evidence that Defendants' participation in corrupt activities caused actual damages to Plaintiffs in the aggregate amount of $1,227,685.00. ECF Dkt. #158, Attach. A-FF. The evidence indicates Betras Plaintiffs suffered the following individual economic losses: Patricia Maiorca ($44,072.00); Diana Luster ($11,182.00); Nicolette and Michael Rinko ($10,526.00); George George ($30,330.00); Ignation George ($45,712.00); Helen Michalos ($71,970.00); Linda Miller ($40,440.00); Charles Miller ($50,550.00); Charles and Linda Miller ($54,170.00); Clinton Apple ($29,770.00); Clinton and Laura Apple ($10,444.00); Wilford and Peggy Kyser ($34,284.00); Ronald and Sally Lou Wilson ($65,616.00); Sophia Simko ($46,368.00); Dolores Zetts ($66,888.00); Clyde and Sylvia Bennett ($27,610.00); Trent Shirey ($23,767.00); Betty Janecko ($17,100.00); Richard and Cynthia Colonna ($20,888.00); Dominic Capogreco ($64,140.00); the Livia Mangiarelli Living Trust ($20,620.00); the Salvatore Mangiarelli Living Trust ($20,380.00); Virgil Mokodean ($71,588.00); B. Louise DiDay ($22,692.00); Nicholas Bubon, III ($11,080.00); William Denman ($180, 224.00); and Ann Urbanek ($135,274.00). ECF Dkt. #158, Attach A-FF.

Defendants are jointly and severally liable for Plaintiffs' damages.  *See Fleischhauer v. Feltner*, 879 F.2d 1290, 1301 (6th Cir. 1989); *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1081(6th Cir. 1990).  In *Fleischhauer*, the Sixth Circuit reversed a trial court's judgment because, *inter alia*, the trial judge instructed the jury to award damages against each defendant to a RICO claim separately and individually.  *Id*.  The court reasoned that numerous criminal forfeiture cases indicate that the nature of a RICO offense mandates joint and several liability.  *Id*.  Therefore, although Betras Plaintiffs do not seek summary judgment against Tokarsky, they are entitled to recover the total amount of the judgment from the other Defendants.

With no disputed material facts, Betras Plaintiffs' evidence supports a grant of summary judgment in their favor as to their claim under RICO.

### B.    <u>Violation of Ohio Rev. Code § 2923.32</u>

The Ohio Corrupt Activities Act ("Ohio RICO"), O.R.C. § 2923.32, provides that "no person employed by, or associated with any enterprise, shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity." O.R.C. § 2923.32(A)(1).  Additionally, O.R.C. § 2923.32(A)(3) provides that "no person, who knowingly has received any proceeds derived, directly or indirectly, from a pattern of corrupt activity . . . shall use or invest, any part of those proceeds, or any proceeds derived from the use or investment of any of those proceeds . . . in the establishment or operation of any enterprise."

An "enterprise" includes "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or organization, association, or group of persons associated in fact although not a legal entity."  Ohio Rev. Code § 2923.31(C).  Further, the phrase "pattern of corrupt activity" means "two or more incidents of

-14-

corrupt activity . . . that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." O.R.C. § 2923.31(E).  Finally, O.R.C. § 2923.31 defines "corrupt activity" as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any . . . (1) Conduct defined as "racketeering activity" under . . . 18 U.S.C. § 1961(1)(B), (1)(C), (1)(D), and (1)(E) . . . or conduct which is in violation of . . . Ohio Rev. Code § 2913.02 (theft statute)."  O.R.C. § 2923.31(I)(1)-(2).

Here, Betras Plaintiffs correctly assert that a finding that Defendants participated in racketeering activity under 18 U.S.C. § 1961(1)(B) establishes that Defendants engaged in corrupt activity for the purpose of Ohio RICO.  In Section III(A) of this Order, the undersigned, based on the undisputed evidence, has found that Defendants engaged in racketeering activity as defined in RICO.  Therefore, Betras Plaintiffs satisfy their burden of proof in regard to the "corrupt activity" requirement of Ohio RICO.

Furthermore, as Betras Plaintiffs allege, Defendants' conduct violated O.R.C. § 2913.02, which provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services: . . . (3) by deception." O.R.C. § 2913.02.  Defendants knowingly made false representations and promises regarding the financial security of the investments in ETS payphones, and viatical insurance settlements.  In so doing, Defendants deceived Plaintiffs in order to obtain control of Plaintiffs' money, securing income, bonuses, and commission for themselves.  In violation of O.R.C. § 2923.32(A)(3), Defendants' "racketeering activity" generated proceeds which they invested back into the Prokop enterprise and the acquisition of real property located at 833 Boardman-Canfield Road,

-15-

Boardman, Ohio. ECF Dkt. #146, Attach. 2.

As detailed above, Betras Plaintiffs have provided unopposed evidence that Defendants'

participation in corrupt activities caused actual damages in the amount of $1,227,685.00. *Supra*

§ III(A)(4); ECF Dkt. #158, Attach. A-FF.  Based on the undisputed evidence of Defendants'

participation in corrupt activities and the resulting damages, Betras Plaintiffs are entitled to

summary judgment in their favor with regard to this claim.

### C.      Fraud and/or Negligent Misrepresentation of Material Facts

Betras Plaintiffs also seek summary judgment on their claim of fraud and in the

alternative, negligent misrepresentation, against Defendants.  ECF Dkt. # 158 at 5.  In order to

satisfy a claim of common law fraud under Ohio law, a plaintiff must prove that:

> (a) a representation or, where there is a duty to disclose, concealment of fact, (b)
> which is material to the transaction at hand, (c) made falsely, with knowledge of its
> falsity, or with such utter disregard and recklessness as to whether it is true or false
> that knowledge may be inferred, (d) with the intent of misleading another into relying
> upon it, (e) justifiable reliance upon the representation or concealment, and (f) a
> resulting injury proximately caused by the reliance.

*Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000) (citing *Burr v. Bd. of*

*County Comm'rs*, 23 Ohio St. 3d 69 (1986)).

Here, Defendants made numerous representations regarding the safety and security of

investments in ETS payphones and viatical insurance benefits.  *See* ECF Dkt. #158, Ex. A-FF

(pages 66-129).  These representations were material to the transaction as the representations

convinced Betras Plaintiffs to decide on these specific investments.  *Id*.  Betras Plaintiffs present

evidence that Defendants knew the statements they made were false or made them with such

utter disregard and recklessness as to the statement's validity that Defendants' knowledge may

-16-

be inferred. *Id.* Furthermore, contrary to their representations, Defendants had not invested money in ETS payphones themselves. ECF Dkt. #146, Attach. 2 at ¶ 19. In addition to making misrepresentations, Defendants concealed a number of material facts regarding the financial status of ETS in order to induce Betras Plaintiffs to invest in the payphones. *See* ECF Dkt. #158, Ex. A-FF (pages 66-129).

Defendants made representations as to the safety and security of the investments in the face of an overwhelming amount of available evidence to the contrary (ETS financial records and pending litigation involving ETS). Furthermore, Defendants made these statements with the intent to defraud the Betras Plaintiffs out of thousands of dollars. Betras Plaintiffs relied upon these representations. *See* ECF Dkt. #158, Ex. A-FF (pages 66-129). This reliance was justified as Defendants presented themselves to the public as financial planners and as a legitimate insurance company. As a result of the reliance, Betras Plaintiffs lost significant amounts of money. *Id.*

Therefore, Betras Plaintiffs are entitled to summary judgment in regard to this claim. Further, based on the foregoing, Betras Plaintiffs' motion for summary judgment as to the alternative claim of negligent misrepresentation is moot.

### D.   Breach of Fiduciary Duty

The elements for the breach of fiduciary duty are: (1) the existence of a duty resulting from a fiduciary relationship; (2) failure to observe the duty; and (3) a proximately resulting injury. *Harwood v. Pappas & Assoc.*, 2005 WL 1177877, *4 (Ohio Ct. App. 8th Dist. May 19, 2005), unreported. Furthermore, the Supreme Court of Ohio has defined "fiduciary relationship" as a relationship "in which special confidence and trust is reposed in the fidelity

-17-

and integrity of another resulting in a position of superiority or influence, acquired by virtue of this special trust." *Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996) citing *Craggett v. Adell Ins. Agency*, 635 N.E.2d 1326, 1331 (Ohio Ct. App. 8th Dist. 1993).  A fiduciary duty may arise through formal agreement or through an informal relationship, a *de facto* fiduciary relationship.  *Id*.  However, a fiduciary duty may only result from an informal relationship if both parties understand that a special trust or confidence has been reposed.  *Id*.

Betras Plaintiffs' motion for summary judgment and the supporting affidavits bring to light undisputed evidence of the existence of a fiduciary relationship.  In this case, the Defendants marketed themselves to the general public as financial advisors.  As a result, Betras Plaintiffs came to Defendants for financial advice.  Defendants made specific representations regarding the safety of the investments in an effort to gain Betras Plaintiffs' confidence.  *See* ECF Dkt. #158, Ex. A-FF (pages 66-129).

Defendants' efforts coupled with the Betras Plaintiffs' reliance upon Defendants' representations establishes evidence of both parties' understanding of a special trust and the existence of a *de facto* fiduciary relationship.  Therefore, Defendants' misrepresentation of and concealment of information regarding the safety of the investments resulted in a breach of fiduciary duty.

### E.    Damages

Betras Plaintiffs seek actual damages equaling their respective investments made based on Defendants' corrupt and fraudulent activity; triple their actual damages pursuant to O.R.C. § 2923.34 (E) and 18 U.S.C. § 1964(c); reasonable attorney's fees and litigation costs; and punitive damages for Defendants' liability based on fraudulent, illegal and corrupt activity.

-18-

ECF Dkt. #158 at 29, #159 at 9.

Ohio Rev. Code § 2923.34 (E) provides that "any person directly or indirectly injured by conduct in violation of section 2923.32 of the Revised Code . . . shall have a cause of action for triple the actual damages the person sustained."  In order to recover, a plaintiff must prove the violation or conspiracy to violate Ohio RICO and actual damages "by clear and convincing evidence."  O.R.C. § 2923.34(E).  A plaintiff who prevails under § 2923.34(E) shall recover reasonable attorney fees and costs of investigation and litigation.  O.R.C. § 2923.34(F). Like Ohio RICO's civil remedies, 18 U.S.C. § 1964(c) provides that "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . ."

Here, as discussed in Section III (B) of this Order, Betras Plaintiffs provide evidence that Defendants violated O.R.C. § 2923.32 and that individual Betras Plaintiffs suffered actual damages.  Betras Plaintiffs prove by clear and convincing evidence that Defendants violated Ohio RICO and as a result Betras Plaintiffs have sustained actual damages of $1,227,685.00; therefore, the Court awards actual damages in the amount of $1,227,685.00.  Pursuant to O.R.C. § 2923.34 (E) and 18 U.S.C. § 1964(c) the Court also awards treble damages in the amount of $3,683,055.00.  The award of treble damages shall act in lieu of any punitive damages.  The total damages awarded are, in the aggregate, $4,910,740.00.

Furthermore, Betras Plaintiffs shall be entitled to recover reasonable attorney fees and costs pursuant to O.R.C. § 2923.34(F).  Accordingly, Betras Plaintiffs shall submit, within fourteen (14) days of this Order, an itemized list of attorney fees and costs incurred over the

-19-

course of this litigation for this Court's review.

## V.      CONCLUSION

For the foregoing reasons, this Court GRANTS Betras Plaintiffs' motion for summary judgment against Defendants John Prokop, Pro Insurance Agency, Inc., Pro Financial Planners Curtis Hayes, Jean Hayes, and Hayes Financial Group as to all counts in the Amended Complaint, except Count 4 for negligent misrepresentation, which the Court DISMISSES as MOOT.  Accordingly, this Court enters judgment in favor of the Betras Plaintiffs in the amount of $4,910,740.00, to be divided among the individual Betras Plaintiffs as indicated in the following table:

| Plaintiff | Actual Damages | Treble Damages | Total Damages Defendants are ordered to pay (sum of actual damages and treble damages) |
|---|---|---|---|
| Patricia Maiorca | $44,072.00 | $132,216.00 | $176,288.00 |
| Diana Luster | $11,182.00 | $33,546.00 | $44,728.00 |
| Nicolette and Michael Rinko | $10,526.00 | $31,578.00 | $42,104.00 |
| George George | $30,330.00 | $90,990.00 | $121,320.00 |
| Ignation George | $45,712.00 | $137,136.00 | $182,848.00 |
| Helen Michalos | $71,970.00 | $215,910.00 | $287,880.00 |
| Linda Miller | $40,440.00 | $121,320.00 | $161,760.00 |
| Charles Miller | $50,550.00 | $151,650.00 | $202,200.00 |

| | | | |
|---|---|---|---|
| Charles and Linda Miller | $54,170.00 | $162,510.00 | $216,680.00 |
| Clinton Apple | $29,770.00 | $89,310.00 | $119,080.00 |
| Clinton and Laura Apple | $10,444.00 | $31,332.00 | $41,776.00 |
| Wilford and Peggy Kyser | $34,284.00 | $102,852.00 | $137,136.00 |
| Ronald and Sally Lou Wilson | $65,616.00 | $196,848.00 | $262,464.00 |
| Sophia Simko | $46,368.00 | $139,104.00 | $185,472.00 |
| Dolores Zetts | $66,888.00 | $200,664.00 | $267,552.00 |
| Clyde and Sylvia Bennett | $27,610.00 | $82,830.00 | $110,440.00 |
| Trent Shirey | $23,767.00 | $71,301.00 | $95,068.00 |
| Betty Janecko | $17,100.00 | $51,300.00 | $68,400.00 |
| Richard and Cynthia Colonna | $20,888.00 | $62,664.00 | $83,552.00 |
| Dominic Capogreco | $64,140.00 | $192,420.00 | $256,560.00 |
| The Livia Mangiarelli Living Trust | $20,620.00 | $61,860.00 | $82,480.00 |
| The Salvatore Mangiarelli Living Trust | $20,380.00 | $61,140.00 | $81,520.00 |
| Virgil Mokodean | $71,588.00 | $214,764.00 | $286,352.00 |

| B. Louise DiDay | $22,692.00 | $68,076.00 | $90,768.00 |
| Nicholas Bubon, III | $11,080.00 | $33,240.00 | $44,320.00 |
| William Denman | $180,224.00 | $540,672.00 | $720,896.00 |
| Ann Urbanek | $135,274.00 | $405,822.00 | $541,096.00 |
| **All Plaintiffs Combined** | **$1,227,685.00** | **$3,683,055.00** | **$4,910,740.00** |

Upon this Court's approval, judgment shall also include reasonable attorney fees and costs provided that Betras Plaintiffs submit, within fourteen (14) days of this Order, an itemized list of attorney fees and costs incurred over the course of this litigation.  ECF Dkt. #158, 159.

   IT IS SO ORDERED.

   SIGNED and ENTERED on this 18th day of December, 2007.


                                              */s/George J. Limbert*
                                              GEORGE J. LIMBERT
                                              United States Magistrate Judge

-22-